# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

**JUANITA GAIL EDWARDS**                                                  **PLAINTIFF**

**V.**                                        **CIVIL ACTION NO. 1:20CV292 LG-LGI**

**KILOLO KIJAKAZI,**
**COMMISSIONER OF SOCIAL SECURITY**                                **DEFENDANT**

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Juanita Edwards appeals the final decision denying her application for a period of disability and disability insurance benefits (DIB). The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge. Having carefully considered the entire record, including the medical records in evidence, and all the applicable law, the undersigned recommends that this matter be affirmed.

On June 4, 2018, Plaintiff filed an application for DIB alleging a disability onset date of December 1, 2017, due to hip, knee, and back pain, diabetes, schizophrenia, bipolar disorder, post-traumatic stress disorder, a 2014 heart attack, high cholesterol, and high blood pressure. She was 41 years old on her alleged onset date, with past relevant work as a convenience store manager and companion. Following agency denials of her application, an Administrative Law Judge ("ALJ") rendered an unfavorable decision finding that Plaintiff had not established a disability within the meaning of the Social Security Act. The Appeals Council subsequently considered new evidence submitted by

Plaintiff on administrative appeal, but found it presented no basis for changing the ALJ's decision. Plaintiff now appeals that decision.

The evidence is detailed in the memorandum briefs and the ALJ's decision, and thus, will not be repeated in depth here. As a general matter, Plaintiff testified at the administrative hearing that problems with her back, knee, and hip as well as constant migraines "all day every day" prevent her from working. Though medications have helped to alleviate her migraines, Plaintiff noted that she has had to undergo several medication changes over the course of her treatment. She has also had to contend with diabetes as well as shortness of breath since suffering from a heart attack in 2014. As a result, she cannot walk long distances and has difficulty exercising.

In addition to her physical impairments, Plaintiff has been diagnosed with major depressive disorder and post-traumatic stress disorder, stemming from her mom's death, her elderly aunt's care, and her husband's attempt on her life. Antidepressants and anti-anxiety medications help to alleviate her symptoms at times, but she still has recurring nightmares and episodes of trichotillomania. Notwithstanding, Plaintiff testified that she is able to go grocery shopping twice a week, care for her children, and transport them to basketball and football practice and the occasional game.

At step one of the five-step sequential evaluation,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. At steps two and

---

[1] Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is

three, the ALJ found that although Plaintiff's heart disease, bilateral knee and right hip

degenerative joint disease, left shoulder labrum tear, diabetes mellitus with neuropathy,

headaches, hypertension, chronic bronchitis, major depressive disorder, and post-

traumatic stress disorder were severe, they did not meet or medically equal any listing.

At step four, the ALJ found that Plaintiff had the residual functional capacity to perform

light work except:

> She should never climb ladders. She should never be exposed to
> unprotected heights or work around dangerous machinery. She can perform
> frequent handling. She can perform occasional bending, stooping, kneeling,
> crouching, and crawling. She can understand and remember simple routine
> tasks and sustain those tasks for two hours at a time throughout an eight-
> hour workday. She can tolerate occasional interaction with the public,
> coworkers, and supervisors.

Based on vocational expert testimony, the ALJ concluded that given Plaintiff's age,

education, work experience, and residual functional capacity, she is able to perform work

as a booth cashier, cafeteria attendant, and furniture rental clerk.

### Standard of Review

Judicial review in social security appeals is limited to two basic inquiries: (1)

whether there is substantial evidence in the record to support the ALJ's decision; and (2)

whether the decision comports with relevant legal standards. *Webster v. Kijakazi*, 19

F.4th 715, 718 (5th Cir. 2021); *Salmond v. Berryhill*, 892 F.3d 812, 816 (5th Cir. 2018).

As the United States Supreme Court recently reiterated:

there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*,
168 F.3d 152, 154 (5th Cir. 1999).

> The phrase "substantial evidence" is a term of art used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 203 L. Ed. 2d 504, 139 S. Ct. 1148, 1154 (2019) (citations and internal quotations and brackets omitted); *see also Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).  On judicial review, this Court may not re-weigh the evidence, try the case *de novo,* or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision.  *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

### Discussion

Plaintiff raises three assignments of error on appeal:  The ALJ failed to properly weigh her treating cardiologist's opinion; the ALJ failed to consider her migraine headaches; and, the Appeals Council failed to remand her claim to the ALJ following the submission of new evidence. The Commissioner counters that the proper standards were applied, and substantial evidence supports the ALJ's decision. Given the evidence in this case, the Court finds the ALJ's decision should be affirmed.

### 1.

As her first point of error, Plaintiff argues the ALJ's residual functional capacity determination is not substantially supported by the evidence because the ALJ erred in

failing to find the cardiac medical source statement submitted by her cardiologist persuasive. This argument is unavailing.

An ALJ's residual functional capacity determination is an assessment, based on all of the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite his or her impairments. 20 C.F.R. § 404.1545(a), 416.945(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). It is not a medical opinion, but an administrative finding of fact. Social Security Ruling 96–8p, *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P (S.S.A. July 2, 1996) n. 4). The sole responsibility for assessing a claimant's residual functional capacity rests with the ALJ, who is not required to incorporate limitations in the residual functional capacity determination that he did not find to be supported by the record. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)). In making this assessment, the opinions of treating physicians have historically been assigned controlling weight, though ALJs have always been free to reject any opinion, in whole or in part, when the evidence supports a contrary conclusion. *Kneeland v. Berryhill*, 850 F.3d 749, 760 (5th Cir. 2017); *Garcia v. Colvin*, 622 F. App'x 405, 410 (5th Cir. 2015); 40 C.F.R. § 404.1527.[2] Social security regulations were revised in recent years so that no specific evidentiary weight, including controlling weight, is to be given to medical opinions from treating sources. 20

---

[2] 20 C.F.R. § 404.1527 applies to claims filed before March 27, 2017. For claims filed on that date and thereafter, 20 C.F.R. § 404.1520c applies, and it provides, *inter alia*, that no specific evidentiary weight is to be given to medical opinions from medical sources.

C.F.R. § 404.1520(c) (2019).  Under the new regulations, supportability and consistency

of medical opinions are the most important factors, and ALJs may, but are no longer

required to, explain how they considered other factors. *Id.* An ALJ remains free to assign

little or no weight to the opinion of any physician when the physician's statements are

brief and conclusory, are not supported by medically acceptable clinical laboratory

diagnostic techniques or are otherwise unsupported by the evidence.  *Bayer v. Colvin*,

557 F. App'x 280, 287–288 (5th Cir. 2014) (citations omitted).

Relevant here, in November 2018, Plaintiff's cardiologist submitted a medical

source statement indicating that she would have occasional "*marked limitation of*

*physical activity*, as demonstrated by fatigue, palpitation, dyspnea, or anginal discomfort

[with] ordinary physical activity, . . . though . . . comfortable at rest."  He specifically

opined that she would not be able to sit, stand, or walk for more than two hours per day,

without the need for a ten-minute break, the need to shift positions at will, or the need to

elevate her legs if sitting for prolonged periods of time.  Exertionally, she could

occasionally lift no more than ten pounds and twist and stoop, but she could never climb

and only rarely crouch.  He also opined that she should avoid exposure to certain

environmental irritants but assigned no other limitations.

Upon considering the evidence, the ALJ did not find this opinion to be sufficiently

supportive or persuasive enough to find Plaintiff incapable of performing a reduced range

of light work. The ALJ explained as follows:

> The record simply does not show Dr. Khimenko's assessed loss of
> functioning as his opinion is neither consistent with nor supported by the
> record. Her complaints were rather minimal and Dr. Khimenko even noted

6

> that she was asymptomatic. Regarding exertional limitations, the undersigned finds the opinions provided by the Disability Determination Services consultants persuasive. At the initial determination, Dr. Faucett determined, and on reconsideration, Dr. James affirmed, that the claimant is capable of performing light work with occasional postural limitations. [Dr. Faucett's] opinion is supported by medical evidence considered in his residual functional capacity explanation and is consistent with and supported by the record.

Plaintiff does not directly address the ALJ's conclusion that the agency physicians' assessments were more consistent and supported by the record. Instead, she cites to the instances of record where her cardiologist documented her complaints of palpitations, shortness of breath, and chest pain to support her claim that the ALJ improperly assessed his opinion. However, Plaintiff's "burden is not to highlight evidence contrary to the ALJ's ruling, but to show that there is no substantial evidence supporting the ALJ's decision." *Jones v. Saul*, No. 4:20-CV-00772-BP, 2021 WL 2895867, at \*5 (N.D. Tex. July 9, 2021).

The ALJ acknowledged that cardiology records documented Plaintiff's complaints of chest pain, palpitations, and shortness of breath, which was noted to be close to her "baseline level." Though she had episodic palpitations, recent records in May 2018 showed that Plaintiff denied any chest pain, tightness, pressure, or shortness of breath, and in June 2018, she reported that she was spending more time with her children, doing yard work, and walking for exercise as recommended by her cardiologist. The ALJ also observed that Plaintiff was encouraged by her cardiologist to stop smoking completely.

Even if the Court were to find that the ALJ erred in assessing the cardiologist's medical source statement, the undersigned submits that Plaintiff has not shown that her

substantial rights were affected.  *Kneeland*, 850 F.3d at 761.  Though the cardiologist

opined that Plaintiff would occasionally be markedly limited by fatigue and palpations,

he noted that that she still could walk one city block without rest or severe pain and had a

"fair to good" prognosis.  She was also capable of low stress jobs without any other noted

limitations.

Given the evidence, the undersigned finds no basis for reversal or remand on this

issue.  It is the sole responsibility of the ALJ to interpret the medical evidence to

determine a claimant's residual functional capacity for work.  In so doing, an ALJ is free

to reject any opinion, in whole or in part, "when the evidence supports a contrary

conclusion." *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (*superseded by statute*

*on other grounds*).  That is what occurred here.

## 2.

As her second point of error, Plaintiff argues that the ALJ failed to consider

limitations caused by her migraine headaches in determining her residual functional

capacity, citing to those instances of record where she complained of sensitivity to noise

and light.  However, no physician of record assigned such limitations, and there is no

requirement to present limitations that are not borne out by the record.  Moreover, the

ALJ expressly considered Plaintiff's headaches pursuant to Social Security Ruling 19-4p,

observing as follows:

> Headaches are complex neurological disorders involving recurring pain in
> the head, scalp, or neck. The undersigned has considered the severity and
> duration of the claimant's headaches, treatment, and response to treatment
> of the claimant's headaches. Consistency and supportability between the

8

> reported symptoms and objective medical [evidence] were key in assessing
> the claimant's residual functional capacity determined herein.

A neutral reading of the record confirms the ALJ's assessment. Though Plaintiff indicated that she has constant headaches "all day every day" at the administrative hearing, this was neither with consistent with her testimony nor supported by her treatment records. Rather, she acknowledged, in fact, that her migraines were effectively managed with medication, with adjustments as necessary. A medical condition that can be ***reasonably*** remedied by surgery, treatment or medication is not disabling. *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987). No reversal or remand is warranted on this issue.

**3.**

As her third point of error, Plaintiff alleges that the Appeals Council erred in failing to remand her claim to the ALJ after she submitted new evidence for consideration. When additional evidence is presented to and considered by the Appeals Council, the evidence becomes part of the administrative record and a reviewing court must determine whether the denial of benefits remains supported by substantial evidence. *See Schofield v. Saul*, 950 F.3d 315, 322 (5th Cir. 2020); *Whitehead v. Colvin*, 820 F.3d 776, 780 (5th Cir. 2016); *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005). The Appeals Council considers additional evidence only if it is new, material, and relates to the period on or before the ALJ's decision. 20 C.F.R. § 404.970(b), 404.976 (B). "Evidence that was 'not in existence at the time of the administrative . . . proceedings meets the 'new' requirement for remand to the Secretary.'" *Hunter v. Astrue*, 283 F.

App'x 261, 262 (5th Cir. 2008).  But to be material, the evidence must "relate to the time period for which benefits were denied," and it may not "concern evidence of a later-acquired disability, or of the subsequent deterioration of a previously non-disabling condition."  *Haywood v. Sullivan*, 888 F.2d 1463, 1471–72 (5th Cir. 1989) (quoting *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985)).  However, "even when new and material evidence submitted to an Appeals Council is 'significant' and 'casts doubt on the soundness of the ALJ's findings,' the Appeals Council does not err in refusing to review the claimant's case if it can be determined that substantial evidence nevertheless supports the ALJ's denial of benefits." *Hardman v. Colvin*, 820 F.3d 142, 151 (5th Cir. 2016) (citing *Sun v. Colvin*, 793, F.3d 502, 511-12 (5th Cir. 2015)).  There must be a reasonable possibility that the evidence would have changed the outcome of the Commissioner's determination.  *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).  Substantial evidence supports the Appeals Council's decision that Plaintiff's newly submitted evidence was not so significant as to require remand to the ALJ here.

Nearly a year after the ALJ rendered her decision, Plaintiff submitted a medical source statement from her treating psychiatrist as new evidence.  Contrary to the Commissioner's assertions on appeal, a neutral reading of the records sufficiently establishes that the psychiatrist's opinion, dated January 30, 2020, relates to his treatment of Plaintiff during the relevant time period.[3]  As the Commissioner does not contest that

---

[3] The Commissioner argues that the psychiatrist's assertion that he has treated Plaintiff since February 2011 should cast doubt on his credibility because the record does not substantiate this date. The undesigned submits that the handwriting of the mental health provider makes it difficult to

the submission's late date constitutes good cause, the undersigned considers only whether the opinion would have changed the ALJ's decision. *Schuler v. Saul*, 805 F. App'x 304, 306 (5th Cir. 2020) ("After all, Schuler only received Flint's reply to his 2013 request for the document in 2018.  He thus 'had a legitimate reason why this evidence was not produced earlier.'" *Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir. 1995).

In his medical source statement, the psychiatrist indicates that Plaintiff had "moderate to marked" limitations in her daily activities, social functioning, and in maintaining concentration and pace, but she still retains a fair ability to ask simple questions; request assistance; interact appropriately with the general public; and can get along with co-workers without distracting them or exhibiting behavioral extremes. Comparatively, following a detailed summary and analysis of the psychiatrist's records, the ALJ found the evidence indicated that Plaintiff was only moderately limited in these areas with a residual functional capacity to "understand and remember simple routine tasks and to sustain those tasks for two hours at a time throughout an eight-hour workday . . . [with] occasional interaction with the public, coworkers, and supervisors."  It has long been settled that "restrictions to rare public interaction, low stress, and simple, one-to-two-step instructions" are a reasonable incorporation of moderate concentration, persistence, and pace limitations. *Bordelon v. Astrue*, 281 F. App'x 418, 423 (5th Cir. 2008).  And while the psychiatrist notes elsewhere in his report that Plaintiff has "poor to no ability" in other mental areas necessary to do even unskilled work, this degree of

---

pinpoint the psychiatrist's earliest date of treatment. Notwithstanding, records from the mental health facility where the psychiatrist was employed date back to February 2011.

limitation is inconsistent with the findings in the report as noted above, and the record as whole.

Given the totality of evidence before the ALJ, Plaintiff has not shown that the psychiatrist's medical source statement would have changed the outcome of the ALJ's decision.  Of those limitations consistent with and supported by the evidence, the medical source statement did not so contradict earlier evidence that a weighing of old and new evidence was required, nor does it undermine the existence of substantial evidence supporting the ALJ's determination that Plaintiff was capable of a reduced range of light work if limited to simple tasks and occasional interaction with others. *Jones v. Astrue*, 228 F. App'x 403, 407 (5th Cir. 2007).  No reversal or remand is thus warranted on this issue.

### Conclusion

In sum, based upon consideration of the evidentiary record, the ALJ determined that Plaintiff failed to establish that her impairments were of sufficient severity to establish disability. The undersigned's review of the record compels a recommendation that the ALJ applied the correct legal standard, and that substantial evidence supports the ALJ's decision.

### NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the Local Uniform Civil Rules of the United States District Courts for the Southern District of Mississippi, any party may serve and file written objections within 14 days after being served with a copy of this Report and Recommendation.  Within 7 days of the service of the objection, the opposing party must

either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, except upon grounds of plain error.  28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

Respectfully submitted on January 6, 2023.

 /s/ LaKeysha Greer Isaac
UNITED STATES MAGISTRATE JUDGE